**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 17, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

PUBLISH

UNITED STATES COURT OF APPEALS

TENET CIRCUIT

---

WILDEARTH GUARDIANS,

      Plaintiff - Appellant,

v.

UNITED STATES ARMY CORPS OF
ENGINEERS,

      Defendant - Appellee,

and

MIDDLE RIO GRANDE
CONSERVANCY DISTRICT,

      Intervenor Defendant -
Appellee.

No. 18-2153

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:14-CV-00666-RB-SCY)

---

Samantha Ruscavage-Barz (Steven Sugarman, Cerillos, New Mexico, with her on
the briefs), WildEarth Guardians, Santa Fe, New Mexico, for Appellant.

Michael T. Gray, Attorney (Jeffrey Bossert Clark, Assistant Attorney General,
Eric Grant, Deputy Assistant Attorney General, Robert J. Lundman and Andrew A
Smith, Attorneys, Environment and Natural Resources Division, and Melanie
Casner, M. Leeann Summer and Elizabeth Pitrolo, Attorneys, United States Army
Corps of Engineers, with him on the brief), Environment and Natural Resources
Division, United States Department of Justice, Jacksonville, Florida, for Appellee.

Before **TYMKOVICH**, Chief Judge, **PHILLIPS**, and **McHUGH**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

This is yet another episode in the story over the Rio Grande. In the arid southwest, the Rio Grande is one of only a handful of rivers that create crucial habitat for plants, animals, and humans. And it is a fact of life that not enough water exists to meet the competing needs. Recognizing these multiple uses, Congress has authorized the Bureau of Reclamation and the Army Corps of Engineers to maintain a balance between the personal, commercial, and agricultural needs of the people in New Mexico's Middle Rio Grande Valley and the competing needs of the plants and animals.

WildEarth Guardians asserts the Army Corps of Engineers failed to protect the needs of two endangered species that live along the river: the Southwestern Willow Flycatcher and the Rio Grande Silvery Minnow. The group brought this action under the Endangered Species Act, arguing the Army Corps of Engineers has failed to exercise its discretion and consult with the U.S. Fish and Wildlife Service (FWS) about alternative water management policies that would help protect these species.

The district court concluded the Army Corps of Engineers was not authorized by the statute to allocate additional water to species' needs and

therefore was not required to consult with FWS.  Finding no error in the district court's reasoning, we AFFIRM.

## I.  Background

The Rio Grande is a large river located in the southwest United States, flowing from Colorado to the Gulf of Mexico. Because Colorado, New Mexico, and Texas each rely on the Rio Grande as a critical water source, the states in 1939 entered into the Rio Grande Compact, which apportions water to each state. Unfortunately, there is not enough water to meet all the competing needs of vegetation, wildlife, and human inhabitants.

The Middle Rio Grande Valley is located in central New Mexico and is the focus of this case.  The Middle Rio Grande Conservancy District was "formed to consolidate water rights and irrigation systems, and to rehabilitate the existing irrigation systems in the Valley." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1104 (10th Cir. 2010).  But the Conservancy District struggled without additional dam storage, which led Congress to approve the Middle Rio Grande Conservancy District Project.  This Project allowed the Corps to rehabilitate, construct, maintain, and operate dams and other devices on the Rio Grande.  The Corps is required to operate within strict parameters because the Rio Grande Compact between Colorado, New Mexico, and Texas equitably apportions

waters of the Rio Grande Basin, and the Corps is not to interfere with its operations.

The Flood Control Acts of 1948 and 1960 authorized construction and maintenance of the projects in question in this litigation. The 1948 Flood Control Act proposed construction of the Jemez Canyon Dam and what is now known as the Abiquiu Dam. The 1948 Act stated that "all reservoirs constructed as part of the project shall be operated solely for flood control except as otherwise required by the Rio Grande Compact." Pub. L. No. 81-858, 62 Stat. 1171, 1179 (1948). The 1960 Flood Control Act later authorized construction of the Cochiti Dam and the Galisteo Dam. Again, the 1960 Act stated the Cochiti and Galisteo reservoirs "will be operated solely for flood control and sediment control." Pub. L. No. 86-645, 74 Stat. 480, 493 (1960). The 1960 Act specified requirements for water outflow, water releases, water storage, and general operations.

In 1994, the FWS listed the Rio Grande Silvery Minnow as an endangered species under the Endangered Species Act of 1973. 59 Fed. Reg. 36,988 (July 20, 1994). The minnow only survives in the Middle Rio Grande starting at the Cochiti Dam. The following year, FWS listed the Southwestern Willow Flycatcher as an endangered species under the Endangered Species Act. 60 Fed. Reg. 10,694 (Feb. 27, 1995). The Southwestern Willow Flycatcher occupies habitat along the Rio Grande in willow, cottonwood, buttonbush, and other

deciduous trees.  Both parties agree the species' critical habitat would be impacted by Corps activity.

The Endangered Species Act instructs federal agencies to avoid jeopardizing endangered wildlife and flora.  Section 7(a)(2) of the Act requires federal agencies to, "in consultation with and with the assistance of the Secretary [of Commerce or the Interior], insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species."  16 U.S.C. § 1536(a)(2).  But this section only applies "to all actions in which there is discretionary Federal involvement or control."  50 C.F.R. § 402.03.  The National Marine Fisheries Service (NMFS) and the FWS both administer the Endangered Species Act.  50 C.F.R. § 402.01(b).  The NMFS has jurisdiction over specific endangered or threatened species regulated by the Secretary of Commerce.  50 C.F.R. § 222.101.  FWS has jurisdiction over all other listed species.  50 C.F.R. § 402.01(b).

Once the federal agency consults with FWS or NMFS pursuant to § 7(a)(2), the Secretary issues a written biological opinion "setting forth the Secretary's opinion, and a summary of the information on which the opinion is based, detailing how the agency action affects the species or its critical habitat." 16. U.S.C. § 1536(b)(3)(A).  The Secretary then suggests "reasonable and prudent alternatives" for the federal agency to implement.  The agency can either

terminate the planned action, implement the alternative, or seek an exemption. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 652 (2007).

Since the mid-1990s, the Army Corps of Engineers and the Bureau of Reclamation have engaged in consultations with FWS about endangered species issues—whether these consultations were voluntary or formal § 7(a)(2) consultations is in dispute. As a result of these consultations, in 2003, FWS issued a biological opinion discussing the agencies' effects on the minnow and flycatcher in the Middle Rio Grande. The biological opinion included a reasonable and prudent alternative to protect the minnow and flycatcher. But the proposed alternative did not distinguish between Reclamation and the Corps—it analyzed the actions and their effects together. Congress directed compliance with the biological opinion until the opinion expired in 2013, noting that compliance satisfied agency obligations with respect to the Endangered Species Act.

Before the biological opinion expired, the Corps reinitiated consultation with FWS. The Corps requested an individual biological opinion—one that was specific to Corps activities. But FWS declined. Thus, the Corps withdrew from consultation to reevaluate its own statutory obligations and determine whether its actions were discretionary such that it could implement alternatives to protect the minnow and flycatcher. The Corps sought to clearly identify what actions the

Corps—rather than Reclamation—had control over. As a result of this reevaluation, the Corps determined its actions in the Middle Rio Grande were not discretionary, and it was bound by the requirements of the 1960 Flood Control Act.

## II. Jurisdiction

We consider first a threshold question of jurisdiction. The district court's initial order disposed of all the issues but one. The order stated:

> It is unclear whether Corps is consulting over its maintenance operations, and, if not, whether Corps has verified the effects of such operations, as the 2014 Reassessment suggested. Thus, on maintenance operations, the Court will reverse and remand to Corps for clarification and explanation.

App. 255. The Corps then filed a notification that addressed the issues raised by the court and requested the district court to reconsider the remanded issue.

The district court subsequently issued an order in response to the Corps' motion for reconsideration and notice of satisfaction of remand. The district court stated:

> Since Corps obviated the need for a temporary instruction by quickly responding to the remand order before taking any maintenance activities at issue, and to prevent later disputes about its intent, the Court will remove references to reversal from its June 6, 2018 Opinion and add language clarifying that it wanted to withhold final judgment on the maintenance activities until Corps provided more information on remand.

App. 292. The district court held the Corps had provided sufficient explanation and thus denied WildEarth Guardians' motion to set aside or reverse the Corps' decision.

The district court, however, also issued an order amending certain parts of its previous order but it does not appear those changes or clarifications were ever made in the opinion. Because the Amended Opinion still stated the district court was withholding final judgment, we sought supplemental briefing on the question of jurisdiction.

Although the Amended Opinion reversed and remanded the maintenance operations question to the Corps, the district court adequately resolved the remand issue and denied WildEarth's motion in its entirety. The district court also issued a Rule 58 Judgment stating the motion was denied. Based on the court's order and the Rule 58 Judgment, we can be certain the district court issued a final judgment despite the Amended Opinion's language. Thus, we agree with both parties there has been a final judgment and this court has jurisdiction to decide the appeal.

## III. Analysis

Agencies must formally consult with FWS if an agency action: (1) "may affect" a listed species, and (2) is one "in which [the agency] has discretion to act for the benefit of an endangered species[.]" *WildEarth Guardians v. Envtl. Prot.*

*Agency*, 759 F.3d 1196, 1200 (10th Cir. 2014). Both parties agree the Corps'

operations will affect the minnow and flycatcher. The sole question here is

whether the agency has discretion to act such that it must formally consult with

FWS under § 7(a)(2).

When considering questions of statutory interpretation, we first look to the

plain language of the statute. In this case, we consider whether the Corps has the

discretion to operate its projects in the Middle Rio Grande such that the

consultation requirements of the ESA are triggered. The 1948 Flood Control Act

states:

> At all times when New Mexico shall have accrued debits as defined by
> the Rio Grande Compact all reservoirs constructed as a part of the
> project *shall be operated solely for flood control* except as otherwise
> required by the Rio Grande Compact, and at all times all project works
> shall be operated in conformity with the Rio Grande Compact as it is
> administered by the Rio Grande Compact Commission.

62 Stat. at 1179 (emphasis added).

Likewise, the 1960 Flood Control Act provides further instructions for the

operation and maintenance of the Middle Rio Grande projects:

> [T]he storage of water in and the release of water from all reservoirs
> constructed by the Corp of Engineers as part of the Middle Rio Grande
> project will be done as the interests of *flood and sediment control* may
> dictate ... [Projects] will be operated at all times in the matter described
> above in conformity with the Rio Grande Compact, and *no departure*
> *from the foregoing operation schedule will be made except with the*
> *advice and consent of the Rio Grande Compact Commission*; provided,
> that whenever the Corps of Engineers determines that an emergency
> exists affecting the safety of major structures or endangering life and

shall so advise the Rio Grande Compact Commission in writing. These rules of operation may be suspended during the period of and to the extent required by such emergency.

74 Stat. at 493 (emphasis added). Put more simply, the Corps must operate the projects in accordance with the instructions in the Flood Control Acts of 1948 and 1960 and the Rio Grande Compact.[1]

Neither Act provides agency discretion. First, the 1948 Act categorically states that the projects will be "operated solely for flood control" purposes. Similarly, the 1960 Act makes clear the Corps lacks discretion to operate the projects. It specifically instructs that the outflow from Cochiti Reservoir will be "at the maximum rate of flow" and that during the summer and fall, the Corps must store over 212,000 acre-feet of water and restrict the inflow to 1,500 cubic feet per second. It also instructs that the releases of water from the Galisteo Reservoir and the Jemez Canyon Reservoir will be limited to the amount necessary to control summer floods. The Corps is not able to operate the Middle Rio Grande projects as it pleases—rather, it is given explicit instructions from Congress and told to follow the instructions except in two very limited

---

[1] WildEarth argues we must look at each of the Corps' activities in the aggregate and that it impermissibly assessed dam operations (and therefore its discretion) in a piecemeal fashion. This distinction is meritless. If the Corps has no discretion over its actions individually, then the Corps has no discretion over its actions in the aggregate. Thus, we consider the Corps' activities as a whole.

circumstances.[2]  Because the Corps does not have discretion in the way it operates these projects, the Corps does not have to formally consult with FWS.  *See WildEarth Guardians*, 759 F.3d at 1200 (holding the Endangered Species Act only requires consultation if the agency has discretion over its operations).

One Supreme Court case is particularly instructive, *National Association of Home Builders v. Defenders of Wildlife*, 551 U.S. 644 (2007).  In *Home Builders*, Defenders of Wildlife asserted the EPA was required to consult under § 7(a)(2) before transferring authority to Arizona under the Clean Water Act to issue discharge permits.  The EPA was specifically instructed under the Act to transfer this authority upon completion of nine statutory criteria.  According to the Supreme Court, the nine criteria acted as both a ceiling and a floor—exactly each of the nine criteria needed to be met before the EPA would transfer authority to Arizona.  By requiring the EPA to consult under Section 7(a)(2), Defenders of Wildlife was effectively asking to make an additional requirement under the Clean Water Act.  The Supreme Court held the transfer of authority was not discretionary because of the nine statutory criteria.  In those circumstances, the EPA lacked discretion to pursue endangered species objectives, and it did not have to engage in consultations.

---

[2] The Flood Control Act of 1960 allows for two exceptions for river operations:  (1) if the Corps seeks "advice and consent of the Rio Grande Compact Commission"; or (2) if "an emergency exists affecting the safety of major structures or endangering life."  *Id.*

In this case, the Corps is similarly tasked with operating the reservoirs for flood and sediment control in a specific manner provided by the Flood Control Acts. The only time the Corps may deviate is if it seeks advice and consent from the Rio Grande Compact Commission or if there is a specific emergency.[3] And the fact that the Compact Commission can authorize deviations from some operational requirements does not create discretion on the part of the Corps to consult with FWS. Because the Corps lacks discretion to operate the projects outside of flood control purposes, requiring consultation under these circumstances would effectively add another statutory requirement.

As discussed previously, the Corps is only required to engage in consultations under § 7(a)(2) when it has discretion to pursue objectives under the Endangered Species Act. Under the Flood Control Acts' statutory mandates, the Corps does not have discretion. Because the Acts are silent on any consultation requirements, we would have to interpret them as including an implicit consultation requirement. We cannot interpret the Acts this way. Rather, they clearly define the role of the Corps—to manage the projects "solely for flood

---

[3] No emergency exists that would apply to the endangered species. Under the Flood Control Act of 1960, an emergency is one that affects "the safety of major structures or endanger[s] life." 74 Stat. at 493. If the Corps determines there is an emergency, it must notify the Rio Grande Compact Commission in writing. Neither party argues suggests such an emergency exists.

control [and sediment control.]"  If Congress intended to require consultation with FWS, it would not have deployed such categorical statutory language.[4]

It is true the Corps has previously deviated from the Flood Control Acts to protect the minnow and flycatcher.  Starting in 1996, the Compact Commission approved several different deviations from the normal operating instructions at the Middle Rio Grande dams.  One example of a deviation is the "fill and spill" deviation where the Corps holds water back in the Cochiti Reservoir for a short period of time.  The Corps then releases the water suddenly, which simulates flood flow and cues minnow spawning.  This type of deviation helps promote minnow spawning while using very limited water—it is considered a "no cost" deviation.

---

[4] One example of discretionary agency action is found in *Rio Grande Silvery Minnow v. Keys*, 333 F.3d 1109 (10th Cir. 2003), *vacated*, 355 F.3d 1215 (10th Cir. 2004) (appeal was mooted by events occurring after the opinion issued).  In *Keys*, the question was whether the Bureau of Reclamation had discretion "to reduce deliveries of available water under its contracts with irrigation districts and cities in New Mexico to comply with the Endangered Species Act."  *Id*. at 1113.  We determined under the contracts, the Bureau of Reclamation "retained the discretion to determine the 'available water' from which allocations would be made" to the districts and how much available water could be allocated to these districts.  *Id.* at 1129.  The court concluded that because there was no contractual provision "specifying absolute amounts of water," and "[g]iven the potential for fluctuation in the 'actual available water,'" Reclamation retained discretion in managing water deliveries.  *Id.* at 1130–31.

Here, in comparison, the Flood Control Acts specify exactly how much water must be delivered at specific times of year.  Congress has already considered the "potential for fluctuation" in water supplies and adjusted the statutory language accordingly.  Thus, unlike Reclamation in *Keys*, the Corps lacks discretion to manage the water flow in the Middle Rio Grande.

-13-

After the Corps reevaluated its responsibilities, the Corps determined it lacked the authority to implement "fill and spill" deviations on its own. Relying on its 2014 Reassessment, the Corps concluded "there is no discretionary Corps action that requires ESA Section 7 consultation." App. 371. Based on this analysis, which is consistent with our own, the Corps' previous deviations are not indicative of whether the Corps' previous operations aimed at the minnow and flycatcher are actually discretionary. These deviations were authorized by the Compact Commission—one of the statutorily enumerated exceptions to the Corps' otherwise strict operating instructions. But this prior practice in no way undermines our interpretation of the statutory language.

Like the Corps' 2014 Reassessment, we similarly conclude the agency lacks discretion to act on behalf of the minnow and flycatcher. The Flood Control Acts leave no discretion to the Corps on Middle Rio Grande operations involving the two listed species. Because the Corps lacks discretion, the Corps does not have to engage in formal § 7(a)(2) consultation with the FWS.

Finally, WildEarth contends the America's Water Infrastructure Act of 2018 allows the Corps to exercise discretion to further ESA objectives. The Act instructs the Corps to restart temporary "fill and spill" deviations involving Cochiti Dam and Jemez Canyon Dam—this gives the Corps some flexibility with

its water operations in an effort to promote minnow spawning.[5]  The Act requires the Secretary of the Army to obtain permission from the Pueblo de Cochiti, the Pueblo of Santa Ana, and the Rio Grande Compact Commission before implementing the temporary deviations.  But rather than adding support for an Endangered Species Act consultation requirement, this language shows the Corps lacks discretion to engage in a freestanding consultation with FWS.  The language ties the Corps' hands further—it must seek approval from three different entities before restarting the temporary deviations, and it is only at the direction of Congress.

## IV.  Conclusion

Accordingly, we **AFFIRM** the district court, finding the Corps lacks discretion over its operations in the Middle Rio Grande and therefore does not need to engage in formal § 7(a)(2) consultations.

---

[5] While the Act might accomplish WildEarth Guardian's ultimate goal—adjust the water flow to protect the minnows and flycatchers—the Act does not undermine our analysis.  The Act only affects the Corps' operations involving Cochiti Dam and Jemez Canyon Dam and does not otherwise touch on the Corps' other projects in the Middle Rio Grande.